UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TERRANCE LAVELL KIRKSEY,<br><br>                Plaintiff,<br><br>v.<br><br>C.O. ANTHONY MATUSHAK,<br>MICHAEL COLE, SGT. JOSHUA<br>GOMM, and JOHN DOE,<br><br>                Defendants. | Case No. 21-CV-588-JPS<br><br>**ORDER** |

On January 21, 2022, the Court entered an order in all of Plaintiff Terrance Lavell Kirksey's open cases, imposing a filing bar which limits him to proceeding with only two cases at any one time. ECF No. 13. The Court instructed Plaintiff to select two of his seven open cases on which he would like to proceed and that the Court would administratively close his remaining cases. *Id.* Plaintiff informed the Court that he would like to proceed on Case Numbers 19-CV-1278 and 21-CV-1357. ECF No. 14. The Court accordingly closed this case on February 7, 2022. ECF No. 15. Plaintiff has since filed motions to re-open this case. ECF Nos. 18, 22. In light of the closure of Plaintiff's other cases before the Court and Plaintiff's submission regarding the exhaustion of administrative remedies in this case, ECF No. 21, the Court will grant Plaintiff's motion to re-open the case.

First, the Court will grant Plaintiff's motion to amend the complaint, ECF No. 20. Federal Rule of Civil Procedure 15 allows a party to amend its pleading once as a matter of course either within twenty-one days of serving it or if the pleading is one to which a responsive pleading is

required, twenty-one days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). A party may otherwise amend its pleading only with either the opposing party's written consent or leave of the court Fed. R. Civ. P. 15(a)(2). Rule 15 also provides that a Court should freely grant leave to amend when justice so requires. Here, the case is essentially starting afresh, and Plaintiff provides that he has amended his complaint to simplify the claims and to limit the number of defendants. Given this, the Court finds that justice requires the ability to amend, and the Court will accordingly grant Plaintiff's motion to amend the complaint. As such, the Clerk of Court will be instructed to file ECF No. 20-1 as the amended complaint. The remainder of this order addresses Plaintiff's motion for leave to proceed without prepayment of the filing fee and screens the amended complaint, ECF No. 20-1, as the operative complaint.

1. **MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On May 17, 2021, the Court ordered Plaintiff to pay an initial partial filing fee of $15.49. ECF No. 7. Plaintiff paid that fee on June 9, 2021. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. ECF No. 2. He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

## 2. SCREENING THE COMPLAINT

### 2.1 Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints

liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

On February 12, 2021, Plaintiff was placed on clinical observation status in the restricted housing unit ("RHU") after Plaintiff pressed the emergency button in his cell from approximately 5:30 p.m. to 6:15 p.m. due to having a mental breakdown and threatening to harm himself. ECF No 20-1 at 3. Defendant John Doe ("Doe") worked in the RHU and told Plaintiff that he would not hurt himself and that Doe did not even care if Plaintiff did. *Id.* Defendant Lt. Cole ("Cole"), Defendant Sgt. Matushak ("Matushak"), and Defendant Sgt. Gomm ("Gomm") were all made aware of Plaintiff's self-harm statements due to the notifications relayed in the chain of command. *Id.* Cole communicated with PSU personnel Dorrow-Stevens, and Plaintiff was placed on observation status due to his known history for self-harm threats. Plaintiff made Cole aware that Doe had been provoking Plaintiff to self-harm. *Id.*

While in observation, Plaintiff was still not in his right state of mind, and he pressed the emergency button in his cell. *Id.* Doe answered the intercom at approximately 6:30 p.m. to 7:10 p.m. *Id.* Plaintiff asked Doe about taunting him and why Doe believed that Plaintiff would not hurt himself. *Id.* Plaintiff further explained that he was having a mental breakdown and that the cell was extremely cold. *Id.* Plaintiff told Doe that he would engage in self-harm at that time. *Id.* Doe again told Plaintiff that he did not believe Plaintiff and that he did not care if Plaintiff self-harmed; Doe then told Plaintiff to go ahead and self-harm. *Id.* at 4. Plaintiff and Doe then engaged in a heated verbal altercation while Plaintiff harmed himself

by busting his head on the wall while Doe watched. Doe failed to intervene and failed to notify any other staff. *Id.* Plaintiff and several other inmates yelled for staff to come, and that Plaintiff had harmed himself and busted his head. *Id.*

Matushak walked down the wing to speak with an inmate for an unrelated, non-emergent reason. *Id.* Plaintiff and other inmates told Matushak that Plaintiff busted his head and needed staff attention, but Matushak continued talking to the other inmate and took no action. *Id.* Matushak at some point communicated with Plaintiff about his head and asked if he needed medical attention; Plaintiff replied, yes. *Id.* Matushak notified Gomm at approximately 7:10 p.m., and Gomm notified Cole.

All Defendants were in front of Plaintiff's cell and observed his busted head. Doe knew or should have known that Plaintiff's head injury warranted medical attention. *Id.* at 4–5. Blood was observed on Plaintiff's forehead and Defendants knew he had harmed himself. *Id.* at 5. All Defendants made a professional medical judgment when they failed to render Plaintiff medical aid. *Id.* Plaintiff maintains that Defendants' conduct was willfully malicious. *Id.* Plaintiff was in excruciating pain and suffered from pre-existing health conditions that Defendants knew about, but Defendants failed to prevent his suffering. *Id.* at 6.

Only Cole wrote an incident report about Plaintiff's situation and Cole falsely acted as if he was the only Defendant principally involved with Plaintiff prior to his self-harm incident. *Id.* Plaintiff alleges that Cole falsified the documents and conspired to cover up the deprivation of Plaintiff's constitutional rights. *Id.* Plaintiff also alleges that Defendants acted together as retaliation against Plaintiff for exercising his rights to request medical attention. *Id.* at 6–7.

Plaintiff did not receive medical attention for his injuries or psychological services until several days later, on February 15, 2021. *Id.* at 7. Then Nurse Matushak, Defendant Matushak's wife, assessed Plaintiff and noted he had a 2 cm healing laceration on his forehead at hairline. *Id.*

### 2.3 Analysis

The Court finds that Plaintiff may proceed on an Eighth Amendment deliberate-indifference claim against Defendant Doe for his or her indifference to the risk of Plaintiff's self-harm. The Eighth Amendment prohibits "cruel and unusual punishments" and "imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate care." *Phillips v. Diedrick*, No. 18-C-56, 2019 WL 318403, at *2 (E.D. Wis. Jan. 24, 2019) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). While a prison official's deliberate indifference to a prisoner's substantial risk of serious harm violates the Eighth Amendment, not every claim by a prisoner that he did not receive adequate care will succeed. *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). To prevail on such a claim, a plaintiff will have to provide evidence showing that "(1) his medical need was objectively serious, and (2) the defendant[] consciously disregarded this need." *Berry v. Lutsey*, 780 F. App'x 365, 368–69 (7th Cir. 2019) (citing *Farmer*, 511 U.S. at 834).

Prison staff have a duty to prevent inmates from causing serious harm to themselves. *Pittman ex rel. Hamilton v. County of Madison*, 746 F.3d 766, 775–76 (7th Cir. 2014). Before an official will be liable for ignoring a risk of self-harm, however, the "risk of future harm must be sure or very likely to give rise to sufficiently imminent dangers." *Davis-Clair v. Turck*, 714 F. App'x 605, 606 (7th Cir. 2018) (internal quotation marks omitted). The question of when that risk of future harm becomes "sure or very likely to

give rise to sufficiently imminent dangers" depends on the circumstances of the case. *See, e.g., Freeman v. Berge*, 441 F.3d 543, 546–47 (7th Cir. 2006) (explaining that "at some point," to ensure a prisoner is not "seriously endangering his health," prison officials would have a duty and right to step in and force a prisoner on a hunger strike to take nourishment); *see also Davis v. Gee*, No. 14-cv-617, 2017 WL 2880869, at *3–4 (W.D. Wis. July 6, 2017) (holding that to show a constitutional injury, the harm must present an objectively, sufficiently serious risk of serious damage to future health; swallowing a handful of Tylenol fails to do that).

Here, Plaintiff alleges that Defendant Doe was aware that he planned to hurt himself and failed to act. Plaintiff further alleges that after informing Doe, Plaintiff engaged in self-harm and was seriously injured and experienced excruciating pain. At this early stage, without more detailed information, the Court will allow Plaintiff to proceed on a deliberate indifference claim against Doe for his or her indifference to Plaintiff's serious risk of self-harm. Plaintiff may not proceed on this claim, however, against the other named Defendants. Plaintiff alleges that Cole, Matushak, and Gomm were all made aware of Plaintiff's self-harm statements through the chain of command. Following this notification however, Plaintiff was placed in observation status for his safety and there are no factual allegations against these Defendants again until *after* Plaintiff had already harmed himself.

Second, the Court finds that Plaintiff may proceed against Doe, Cole, Matushak, and Gomm on an Eighth Amendment deliberate indifference claim for their indifference to Plaintiff's medical need. The Eighth Amendment secures an inmate's right to medical care. Prison officials violate this right when they "display deliberate indifference to serious

medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (internal quotation omitted). Deliberate indifference claims contain both an objective and a subjective component: the inmate "must first establish that his medical condition is objectively, 'sufficiently serious,'; and second, that prison officials acted with a 'sufficiently culpable state of mind,' i.e., that they both knew of and disregarded an excessive risk to inmate health." *Lewis v. McLean*, 864 F.3d 556, 562–63 (7th Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted)).

"A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" *Id.* (quoting *McGowan*, 612 F.3d at 640). At the screening stage, the Court finds that Plaintiff's allegations are sufficient to proceed against Doe, Cole, Matushak, and Gomm. Plaintiff alleges that he slammed his head into the wall and was in excruciating pain, and that these Defendants maliciously denied him medical care for several days. As such, Plaintiff may proceed against Doe, Cole, Matushak, and Gomm on an Eighth Amendment deliberate indifference claim for their indifference to Plaintiff's serious medical need.

Third, Plaintiff may not proceed on a First Amendment retaliation claim. To prevail on a First Amendment claim, Plaintiff must ultimately show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to

impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014).

Here, Plaintiff generally alleges that Defendants retaliated against him for previously requesting medical attention. *Id.* At the pleading stage, the Court finds these allegations sufficient to satisfy the first prong that Plaintiff did engage in protected activity by requesting medical attention. *See Czapiewski v. Pingel*, No. 16-CV-1709, 2017 WL 435803, at *2 (E.D. Wis. Feb. 1, 2017) (allowing retaliation claim to proceed where plaintiff alleged that he expressed a need for medical/psychological care and that, as a result of expressing that need, he received a conduct report and was placed in the restricted housing unit); *Thomas v. Wolfe,* No. 112-CV-443-JMS-DKL, 2016 WL 4592201, at *2 (S.D. Ind. Sept. 2, 2016) (allowing claim to proceed where defendant allegedly retaliated against plaintiff by issuing him a conduct report for submitting health care request forms and seeking copies of his medical records). However, none of Plaintiff's factual allegations suggests that any of Defendants' actions were motivated by his First Amendment activity. Plaintiff's generalized statement that an inference of retaliation can be drawn from the facts is conclusory and is therefore insufficient to proceed. As such, the Court finds that Plaintiff may not proceed on a First Amendment retaliation claim against any Defendants.

Finally, Plaintiff may not proceed on a conspiracy claim. To prevail on a conspiracy claim, a plaintiff must show that: "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). Put differently, Plaintiff must "show an underlying constitutional violation" and "demonstrate that the defendants agreed to inflict the constitutional harm." *Hurt v. Wise*, 880 F.3d

831, 842 (7th Cir. 2018). "Because conspiracies are often carried out clandestinely and direct evidence is rarely available, plaintiffs can use circumstantial evidence to establish a conspiracy, but such evidence cannot be speculative." *Beaman*, 776 F.3d at 511.

Here, Plaintiff's conspiracy fails because the alleged conspiracy act— Defendants falsifying documents related to Plaintiff's self-harm—did not actually deprive him of any constitutional rights. Falsifying the incident report occurred *after* Defendants had already allegedly denied Plaintiff medical attention, and therefore the alleged conspiracy to cover up their actions did not deprive Plaintiff of his rights. Moreover, even if Plaintiff did state a claim that Defendants conspired to violate his right to medical care, such a claim would add nothing to this case because Defendants are state actors, Plaintiff alleges that each Defendant independently violated his rights, and conspiracy is not an independent basis of liability in § 1983 actions. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). As such, the Court finds that Plaintiff may not proceed on a conspiracy claim.

3. **CONCLUSION**

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Eighth Amendment deliberate-indifference claim against Defendant Doe for his or her indifference to the serious risk of Plaintiff's self-harm.

**Claim Two:** Eighth Amendment deliberate-indifference claim against Defendants Doe, Cole, Matushak, and Gomm for their indifference to Plaintiff's serious medical need by failing to provide him medical attention following his self-harm injury.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to reopen the case, ECF No. 18, be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that the Clerk of Court take all appropriate steps to re-open this case;

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to amend the complaint, ECF No. 20, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk of Court docket ECF No. 20-1 as the amended complaint;

**IT IS FURTHER ORDERED** that Plaintiff's duplicative motion to re-open the case, ECF No. 22, be and the same is hereby **DENIED as moot;**

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the amended complaint and this Order have been electronically

transmitted to the Wisconsin Department of Justice for service on Defendants Cole, Matushak, and Gomm;

**IT IS FURTHER ORDERED** that under the informal service agreement, Defendants shall file a responsive pleading to the amended complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the amended complaint, and Plaintiff should strongly consider filing a second amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice.

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $334.51 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 13th day of November, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.